```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF GEORGIA
                      COLUMBUS DIVISION

IN RE MENTOR CORP. OBTAPE      *  MDL Docket No. 2004
                                  4:08-MD-2004 (CDL)
TRANSOBTURATOR SLING PRODUCTS  *
                                  Case No.
LIABILITY LITIGATION           *  4:13-cv-301 (Jeffcoat-Canter)
                               *
```

O R D E R

Defendant Mentor Worldwide LLC developed a suburethral sling product called ObTape Transobturator Tape, which was used to treat women with stress urinary incontinence. Plaintiff Susan Jeffcoat-Canter was implanted with ObTape and asserts that she suffered injuries caused by ObTape. Jeffcoat-Canter brought a product liability action against Mentor, contending that ObTape had design and/or manufacturing defects that proximately caused her injuries. Jeffcoat-Canter also asserts that Mentor did not adequately warn her physicians about the risks associated with ObTape. Mentor seeks summary judgment on all of Jeffcoat-Canter's claims, contending that the claims are barred by North Carolina's statute of repose. For the reasons set forth below, the Court agrees, and Mentor's summary judgment motion (ECF No. 38 in 4:13-cv-301) is granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

## FACTUAL BACKGROUND

Jeffcoat-Canter developed symptoms of stress urinary incontinence and sought treatment from Dr. Donald Pittaway.  Dr. Pittaway implanted Jeffcoat-Canter with ObTape on February 17, 2005.  In November 2005, Jeffcoat-Canter reported to Dr. Pittaway that she was experiencing pain during intercourse and a rigid sensation in her vaginal area.  In December 2005, while Dr. Pittaway was performing a hysterectomy on Jeffcoat-Canter, Dr. Pittaway found that her ObTape had extruded, and he excised the exposed portion of her ObTape.  Then, in August 2006, Dr. Pittaway found an abscess on Jeffcoat-Canter's right side; he attributed it to ObTape, and he treated the abscess.  In November 2006, Jeffcoat-Canter reported to Dr. Pittaway that a piece of tape was coming out of her vagina; Dr. Pittaway excised

2

the exposed piece of mesh. In 2012, Jeffcoat-Canter suffered another abscess that Dr. Pittaway attributed to ObTape, and Jeffcoat-Canter asked Dr. Pittaway who manufactured the sling.

Jeffcoat-Canter asserts claims for negligence, strict liability (design defect, manufacturing defect, and failure to warn), breach of express warranty, breach of implied warranty, fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation.

## DISCUSSION

Jeffcoat-Canter filed her action in this Court on July 15, 2013 under the Court's direct filing order. The parties agreed that for direct-filed cases, the "Court will apply the choice of law rules of the state where the plaintiff resides at the time of the filing of the complaint." Order Regarding Direct Filing § II(E), ECF No. 446 in 4:08-md-2004. Jeffcoat-Canter lives in North Carolina, and all of her ObTape-related treatment took place in North Carolina. The parties agree that North Carolina law applies to Jeffcoat-Canter's claims.

As the Court previously observed, "[u]ntil 2009, North Carolina law provided that no personal injury claims 'based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than six years after the date of initial purchase for use or consumption.'" *Wallace v. Mentor*, Case No. 4:12-cv-355, 2016 WL 873854, at *2 (M.D. Ga. Mar. 4,

2016) (quoting N.C. Gen. Stat. § 1-50(a)(6) (1995)).  In 2009, the statute of repose was modified, but Jeffcoat-Canter does not argue that the 2009 amendment applies to her claims.  Rather, she argues that the North Carolina courts would not apply the statute of repose to her claims.

In support of her argument, Jeffcoat-Canter points to a line of cases recognizing a "disease exception" to the North Carolina statute of repose.  The Fourth Circuit concluded that the North Carolina Supreme Court "does not consider disease to be included within a statute of repose directed at personal injury claims unless the Legislature expressly expands the language to include it."  *Stahle v. CTS Corp.*, 817 F.3d 96, 102 (4th Cir. 2016) (quoting *Hyer v. Pittsburgh Corning Corp.*, 790 F.2d 30, 34 (4th Cir. 1986)).  The Fourth Circuit noted that the North Carolina legislature "ha[s] long been cognizant of the difference between diseases on the one hand and other kinds of injury on the other from the standpoint of identifying legally relevant time periods."[1]  *Id.* at 104 (alteration in original) (quoting *Bullard v. Dalkon Shield Claimants Trust*, 74 F.3d 531, 534 (4th Cir. 1996)).  The Fourth Circuit further emphasized that while the current North Carolina statute of repose applies

---

[1] In 2009, the North Carolina legislature modified the statute of repose for product liability actions.  The legislature noted that nothing in the new law "is intended to change existing law relating to product liability actions based upon disease."  2009 North Carolina Laws S.L. 2009-420 (S.B. 882).

4

to latent injury claims, North Carolina courts do not consider disease to be a latent injury.[2]  *Id*.  So the key question is whether this is a "disease" case.  It is not.

The Fourth Circuit has found that cases fall within the "disease exception" if (1) the plaintiff's injury is a disease, (2) it is difficult to establish the exact time of injury (when the disease process started) and (3) it is difficult to establish that the disease was caused by the product. *Bullard*, 74 F.3d 531, 535 (4th Cir. 1996).  The Fourth Circuit has suggested that the "disease exception" does not apply in situations where it is possible to identify a single point in time when the plaintiff was first injured.  *Hyer*, 790 F.2d at 33 (noting that exposure to a toxic substance does not result in injury until the toxic substance causes a disease; the injury is not identifiable until the disease is diagnosed).  In *Stahle*, the Fourth Circuit found that the plaintiff's leukemia, which was allegedly caused by exposure to toxic solvents in his water, fell within the disease exception.  *Stahle*, 817 F.3d at 98-99. The Fourth Circuit also concluded that pelvic inflammatory disease allegedly caused by an intrauterine device fell within

---

[2] *Stahle* was not a product liability case; it involved a manufacturer's dumping of toxic chemicals into local streams.  In *Stahle*, the Fourth Circuit analyzed the personal injury statute of limitations, which also contains a ten-year statute of repose.  *Stahle*, 817 F.3d at 102 (discussing N.C. Gen. Stat. § 1-52(16)).  The Fourth Circuit relied on the "disease exception" product liability cases that had been decided under pre-2009 version of § 1-50(6), the product liability statute of repose that applies here.

the disease exception. *Bullard*, 74 F.3d at 535 (4th Cir. 1996). And the Fourth Circuit determined that asbestosis caused by asbestos exposure fell within the disease exception. *Hyer*, 790 F.2d at 34.

In all of these cases, the plaintiff developed a disease after being exposed to a product. Jeffcoat-Canter argues that *Bullard* is indistinguishable from her case because *Bullard* also involved an implantable medical device. In *Bullard*, the plaintiff developed pelvic inflammatory disease, which was ultimately attributed to her intrauterine device. But Jeffcoat-Canter did not point to any evidence that she was diagnosed with a disease caused by ObTape. Rather, she experienced symptoms when her medical device eroded through her bodily tissues. And while pelvic inflammatory disease can occur due to a variety of reasons *other than* an intrauterine device, the types of complications Jeffcoat-Canter suffered—like erosion of her ObTape—were directly attributable to ObTape when they happened. Thus, the rationale behind the disease exception does not apply here.

Under § 1-50(a)(6), the pre-2009 statute of repose that applies here, no personal injury claims "based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than six years after the date of initial purchase for use or consumption." N.C. Gen. Stat. § 1-

6

50(a)(6) (1995). Therefore, a personal injury cause of action based on a product defect must be brought within six years of the date when the product was initially purchased for use or consumption. *See Robinson v. Bridgestone/Firestone N. Am. Tire, L.L.C.*, 703 S.E.2d 883, 887 (N.C. Ct. App. 2011) (finding that to bring a claim related to an allegedly defective tire, the plaintiffs had to prove that the "tire was initially purchased within six years of the filing of the complaint").

Here, Jeffcoat-Canter's ObTape was initially purchased for use on February 17, 2005 at the latest, when the ObTape was implanted into her body. Jeffcoat-Canter did not file her Complaint until more than eight years later, on July 15, 2013. Her claims are barred by the North Carolina statute of repose, and Mentor is entitled to summary judgment on all of her claims.[3]

---

[3] Even if the statute of repose did not bar Jeffcoat-Canter's claims, her claims are likely time-barred under North Carolina's statute of limitations. Under North Carolina law, actions "for personal injury" must be brought within three years of accrual; personal injury actions do not accrue "until bodily harm to the claimant . . . becomes apparent or ought reasonably to have become apparent to the claimant". N.C. Gen. Stat. § 1-52(16). Jeffcoat-Canter pointed to evidence that her doctor diagnosed her with an abscess that he attributed to ObTape in August 2006. Jeffcoat-Canter also pointed to evidence that she noticed a piece of tape coming out of her vagina in November 2006 and that Dr. Pittaway excised the exposed portion. Thus, by November 2006 at the latest, Jeffcoat-Canter knew or should have known that at least some of her injuries were related to ObTape. She did not bring this action until more than six years later.

CONCLUSION

As discussed above, Mentor's summary judgment motion (ECF No. 38 in 4:13-cv-301) is granted.

IT IS SO ORDERED, this 15th day of August, 2016.

                                      s/Clay D. Land
                                      CLAY D. LAND
                                      CHIEF U.S. DISTRICT COURT JUDGE
                                      MIDDLE DISTRICT OF GEORGIA